IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD LEIGHTON, JR.,<br>Plaintiff,<br>v.<br>HEARST COMMUNICATIONS, INC.,<br>Defendant. | No. 1:22-CV-4889 (LJL) |

**DEFENDANT HEARST COMMUNICATIONS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS


PRELIMINARY STATEMENT ..... 1

BACKGROUND ..... 2

ARGUMENT ..... 3

I. Leighton lacks standing, because the FAC does not allege a redressable injury. ..... 3

A. The FAC does not plead an injury in fact. ..... 4

B. Nothing in the FAC is likely to be redressed by a judgment for Leighton. ..... 5

II. The FAC fails to state a DMCA claim. ..... 6

A. The FAC does not plausibly allege that CMI was ever on the Photograph. ..... 7

B. The FAC does not allege that Hearst removed CMI or provided false CMI. ..... 9

C. A claim under the DMCA requires allegations of two scienter elements, but the FAC does not plausibly allege any scienter at all. ..... 10

1. The FAC does not plausibly allege that Hearst knew any CMI was false, altered, or removed, as it does not allege any facts related to Hearst's knowledge. ..... 10

2. The FAC does not plausibly allege that Hearst took any steps with intent to further or conceal infringement, in light of Hearst's credit to Leighton. ..... 12

D. Leighton has no cause of action under the DMCA because the FAC does not plead an injury ..... 13

III. At a minimum, the FAC's impermissible requests for relief should be dismissed. ..... 14

A. The FAC does not plausibly state a claim for statutory damages or attorney's fees based on the alleged infringement, given Leighton's untimely registration. ..... 14

B. The FAC does not plausibly state a claim for equitable relief, due to laches. ..... 15

CONCLUSION ..... 16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ABC, Inc. v. Stewart*,
360 F.3d 90 (2d Cir. 2004)....................3

*Allens Creek/Corbetts Glen Pres. Grp., Inc. v. West*,
2 F. App'x 162 (2d Cir. 2001) ....................15

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*,
821 F.3d 352 (2d Cir. 2016)....................14

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
671 F.3d 140 (2d Cir. 2011)....................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................11, 13

*Berni v. Barilla S.p.A.*,
964 F.3d 141 (2d Cir. 2020)....................5

*In re China XD Plastics Co. Ltd. Sec. Litig.*,
No. 14-CV-5308, 2016 WL 1241522 ....................2

*Fischer v. Forrest*,
968 F.3d 216 (2d Cir. 2020)....................7, 8, 9

*Kelly v. Arriba Soft Corp.*,
77 F. Supp. 2d 1116 (C.D. Cal. 1999) ....................8

*Krechmer v. Tantaros*,
747 F. App'x 6 (2d Cir. 2018) ....................10, 12

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014)....................14

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)....................3

*Mango v. BuzzFeed, Inc.*,
970 F.3d 167 (2d Cir. 2020)....................10, 12

*Michael Grecco Prods., Inc. v. Alamy, Inc.*,
372 F. Supp. 3d 131 (E.D.N.Y. 2019) ....................13

*Michael Grecco Prods., Inc. v. Time USA, LLC*,
No. 20-CV-4875, 2021 WL 3192543 (S.D.N.Y. July 27, 2021) ....................................12, 13

*Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.*,
166 F.3d 65 (2d Cir. 1999)........................................................................................6

*On Davis v. The Gap, Inc.*,
246 F.3d 152 (2d Cir. 2001)......................................................................................14

*Papazian v. Sony Music Entm't*,
No. 16-CV-7911, 2017 WL 10154498 (S.D.N.Y. Nov. 22, 2017)..........................................5

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
572 U.S. 663 (2014)..................................................................................................15

*Schiffer Publ'g, Ltd. v. Chronicle Books, LLC*,
No. 03-CV-4962, 2004 WL 2583817 (E.D. Pa. Nov. 12, 2004) ............................................8

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998)................................................................................................3, 5

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021)..........................................................................................4, 5

*United States v. Mercurris*,
192 F.3d 290 (2d Cir. 1999)........................................................................................3

*Zuma Press, Inc. v. Getty Images (US), Inc.*,
845 F. App'x 54 (2d Cir. 2021) ...................................................................................10

**Constitutional Provisions**

U.S. Const. art. III, § 2 ..............................................................................................3

**Statutes**

17 U.S.C. § 412.........................................................................................................5

17 U.S.C. § 412(2) ..........................................................................................6, 14, 15

17 U.S.C. § 504.......................................................................................................15

17 U.S.C. § 504(b) ....................................................................................................6

17 U.S.C. § 1201.....................................................................................................13

17 U.S.C. § 1202..................................................................................................8, 13

17 U.S.C. § 1202(a) ..................................................................................................12

17 U.S.C. § 1202(a)(1)....6, 9, 10

17 U.S.C. § 1202(b)....10, 12

17 U.S.C. § 1202(b)(1)....6, 7, 9, 10

17 U.S.C. § 1202(c)....7, 8

17 U.S.C. § 1202(c)(2)....7

17 U.S.C. § 1202(c)(3)....7

17 U.S.C. § 1203(a)....13, 14

Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*....1, 5, 6, 15

Digital Millennium Copyright Act, 12 U.S.C. § 1201 *et seq.*.... *passim*

**Rules**

Fed. R. Civ. P. 12(b)(1)....16

Fed. R. Civ. P. 12(b)(6)....12, 16

**PRELIMINARY STATEMENT**

Plaintiff Richard Leighton took a picture of a park outside Seattle, Washington, in 2012 (the "Photograph"). Leighton waited more than five years to register his copyright. In the years before Leighton's registration, Defendant Hearst Communications, Inc. ("Hearst") allegedly used the Photograph in two online newspaper articles without Leighton's permission. Now, nearly a decade after Hearst began displaying the image, Leighton has filed this lawsuit, alleging that Hearst infringed his copyright. The First Amended Complaint (ECF No. 10) ("FAC") is remarkable for what it does not say, and three categories of glaring omissions are fatal at this case's outset:

First, the FAC omits the fundamental, threshold requirement of any suit in federal court—an injury. It does not allege that Leighton suffered any concrete harm, without which he lacks constitutional standing. *See infra* Part I.

Second, although the FAC broadly claims that Hearst removed Leighton's copyright management ("CMI") from the Photograph and that Hearst thus violated the Digital Millennium Copyright Act, 12 U.S.C. § 1201 *et seq.* (the "DMCA"), it is effectively silent on every necessary element of a DMCA claim. It does not plausibly allege that any CMI was ever on the Photograph when Leighton published it himself; that Hearst removed any CMI, especially given that it was not on the Photograph in the first instance; that Hearst took any actions knowingly or intentionally, both of which are as required for the claim; or that Leighton was injured by Hearst's handling of the CMI. As the FAC itself confirms, Hearst attributed the Photograph to "Rich Leighton" in a credit, which is more attribution to Leighton than his own webpage provides. *See infra* Part II.

Third, Leighton does not plead entitlement to the relief he requests. The FAC seeks statutory damages and attorney fees, which the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*

(the "Copyright Act"), forecloses based on Leighton's untimely copyright registration. Leighton also seeks equitable relief that should be barred by laches in light of the decade that passed between the start of the alleged infringement and the start of this lawsuit. *See infra* Part III.

## **BACKGROUND**[1]

In January 2012, Leighton took a picture of a waterfall in a popular Washington State park. (FAC ¶ 8.) The same month, he posted it to his website, with the notation "© 2012" nearby. (FAC ¶ 10.) He also indicated the name of a non-party to this lawsuit, "Leighton Photography & Imaging," by allegedly placing those words "immediately adjacent to" the Photograph on the webpage. (FAC ¶ 11.)

Hearst published two articles on the Houston Chronicle website Chron.com displaying the Photograph—one in 2012 and one in 2015. (FAC ¶¶ 12-13.) Each article included a gutter credit attributing the Photograph to "Rich Leighton, Seattle Magazine." (FAC Ex. 3 at 1; *id.* Ex. 4 at 1.) The 2012 article also included a byline attributing the article to Seattle Magazine.[2] (FAC Ex. 3.)

In 2017, Leighton finally registered his copyright in the Photograph. (FAC ¶ 14.) In 2022, nearly ten years after Hearst first displayed the Photograph, Leighton filed this lawsuit.

---

[1] The facts here are drawn from the FAC and assumed to be true for purposes of this motion. Among other disputes Hearst will raise at a later stage if the FAC survives this motion is that Hearst does not publish the website at issue.

[2] Seattle Magazine's version of the article, using the same Photograph with a credit to "Rich Leighton" can be found at https://seattlemag.com/travel-outdoors/best-hikes-see-waterfalls/. At the motion-to-dismiss stage, the Court can take judicial notice of alternative "versions" of any "statements or documents incorporated into the complaint by reference." *In re China XD Plastics Co. Ltd. Sec. Litig.*, No. 14-CV-5308, 2016 WL 1241522, at *1 n.3, *2 n.7 (S.D.N.Y Mar. 23, 2016). The 2012 article on which the FAC relies (FAC Ex. 3) references "Seattle Magazine" and is merely another version of this Seattle Magazine article. In any event, Hearst does not rely on the Seattle Magazine article in the present motion and instead will await a future stage of the litigation to argue based on the role of Seattle Magazine.

The FAC asserts two causes of action: one count of copyright infringement, for using the Photograph on Chron.com (Count One) (FAC ¶¶ 18-20); and one count of violating the DMCA, based on the allegation that Hearst "knowingly and with the intent to conceal infringement, intentionally removed . . . copyright management information" from the Photograph (Count Two) (FAC ¶ 23).

## ARGUMENT

### I. Leighton lacks standing, because the FAC does not allege a redressable injury.

Even assuming the truth of all the allegations, the FAC alleges neither that Leighton was injured nor that any injury is redressable by this lawsuit. This case is therefore not among the "cases" or "controversies" over which this Court has subject-matter jurisdiction. U.S. Const. art. III, § 2.

A plaintiff invoking a federal court's jurisdiction bears the burden of establishing standing. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998). For the "irreducible constitutional minimum of standing," a plaintiff must establish three requirements: (1) that the plaintiff has suffered "an injury in fact," meaning one that is both "concrete and particularized" and "actual or imminent;" (2) that the defendant caused the injury; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citation and quotation marks omitted). To vest a federal court with jurisdiction, "a party must, at all stages of the litigation, have an actual injury which is likely to be redressed by a favorable judicial decision." *United States v. Mercurris*, 192 F.3d 290, 293 (2d Cir. 1999). A court that is not likely to be able to redress any injury "must dismiss the case, rather than issue an advisory opinion." *ABC, Inc. v. Stewart*, 360 F.3d 90, 97 (2d Cir. 2004).

If a complaint falls short on any of *Lujan*'s three elements, there is no subject-matter jurisdiction. Here, the FAC fails to allege *both* a concrete injury in fact *and* any likelihood that an injury (if one could be established) will be redressed by a favorable decision.

**A. The FAC does not plead an injury in fact.**

A constitutional injury-in-fact analysis need not be complicated. "No concrete harm, no standing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021). Indeed, the analysis is not complicated here. The FAC facially fails the first element of *Lujan*'s standing test because it does not allege that Leighton suffered any harm. No factual allegation mentions any damage, injury, or harm. Indeed, even assuming for the sake of argument that Hearst did violate Leighton's rights by using the Photograph and removing CMI, the FAC never refers to any consequence or effect of that alleged conduct.

True, the FAC alleges that Hearst violated a statute and thus violated Leighton's statutory rights (FAC ¶¶ 20, 23); but these are not concrete harms that give rise to constitutional standing. In *TransUnion*, the Supreme Court provided an illustrative list of sufficiently concrete harms that give rise to subject-matter jurisdiction: "physical harms and monetary harms," "reputational harms," "disclosure of private information," "intrusion upon seclusion," and "harms specified by the Constitution itself" such as "abridgment of free speech" and "infringement of free exercise." 141 S. Ct. at 2204. At the same time, the Court held that mere violation of a statute, and even violation of a plaintiff's statutory right without a separate injury, is not sufficiently concrete to satisfy the injury-in-fact requirement. *Id.* at 2205. The FAC, relying on a statutory violation without an alleged concrete harm, is governed by *TransUnion* and must be dismissed.

**B. Nothing in the FAC is likely to be redressed by a judgment for Leighton.**

Where a copyright claim is ineligible for actual damages, profits, or statutory damages, it does not vest a federal court with subject-matter jurisdiction. *Papazian v. Sony Music Entm't*, No. 16-CV-7911, 2017 WL 10154498 (S.D.N.Y. Nov. 22, 2017) (Sullivan, J.).

In *Papazian*, the court decided that the plaintiff could not recover actual damages or profits (due to the statute of limitations) and could not recover statutory damages or attorney's fees (based on an untimely registration under 17 U.S.C. § 412), so the court dismissed the action for lack of standing. *Id.* at *2. The court rejected the plaintiff's arguments that he had standing based on requests for declaratory relief and the interest of avoiding "future infringements," reasoning that these requests would "not redress a cognizable Article III injury." *Id.* (quoting *Steel Co.*, 523 U.S. at 107).

Leighton requests various forms of technical relief, but each is unavailable as a matter of law or would not redress a cognizable Article III injury:

- The FAC seeks a declaration that Hearst violated the Copyright Act. (FAC at 5 ¶ A.) This request cannot support standing, as it would amount to an advisory opinion. *See TransUnion*, 141 S. Ct. at 2203.
- The FAC seeks an injunction against "copying and republishing [the Photograph] without consent." (FAC at 5 ¶ B.) The FAC alleges no likely future injury—and certainly not an actual and imminent one—so this request cannot support standing. *See Berni v. Barilla S.p.A.*, 964 F.3d 141 (2d Cir. 2020). Besides, the requested injunction is overly broad and would impose an unconstitutional prior restraint on freedom of the press and freedom of speech, because it would prohibit a fair use. *See*

*Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.*, 166 F.3d 65 (2d Cir. 1999) (injunction did not violate the First Amendment only because it allowed for fair use).

- The FAC seeks the profits "derived by [Hearst] by their infringement . . . ." (FAC at 5 ¶ C.) It is unclear whether this request seeks an equitable accounting or the specific measure of damages provided in 17 U.S.C. § 504(b).[3] If an equitable remedy, this relief is unavailable based on laches. *See infra* Part III.B. Whether equitable or legal, the FAC does not allege that Hearst profited from the alleged infringement.
- The FAC seeks actual damages. (FAC at 5 ¶ D.) But the FAC does not allege that Leighton was damaged, so actual damages are unavailable.
- The FAC seeks statutory damages and legal fees. (FAC at 5 ¶¶ D-E.) The Copyright Act makes statutory damages and fees unavailable where, as here, the alleged infringement occurs after the first publication of the work and before the copyright registration. 17 U.S.C. § 412(2); *see infra* Part III.A.

In short, even if Leighton had suffered a concrete injury in fact, the FAC still does not seek relief that is available to redress an injury. Either of those failures would require dismissal of the FAC, and the two together underscore Leighton's lack of standing.

## II. The FAC fails to state a DMCA claim.

The FAC alleges that Hearst "intentionally removed the copyright management information from [the] Photograph" and that Hearst therefore violated two subsections of the DMCA. (FAC ¶ 23 (citing 17 U.S.C. § 1202(a)(1) and (b)(1)).) One subsection prohibits knowingly providing false CMI with intent to further an infringement, 17 U.S.C. § 1202(a)(1),

---

[3] While the Copyright Act provides for recovery of profits in excess of a plaintiff's actual damages, 17 U.S.C. § 504(b), the FAC's request for "all gains, profits, and advantages derived by Defendant" (FAC at 5 ¶ C) is broader than the statutory remedy.

and the other prohibits intentionally removing or altering CMI with knowledge that the alteration or removal will further an infringement, *id.* § 1202(b)(1).

Under either subsection, the FAC's allegations fall far short of describing a violation. Even accepting the allegations as true, the FAC does not plausibly describe *any* of the elements of a DMCA claim: *First*, the DMCA applies only if CMI was on the Photograph in the first instance, but the FAC does not describe any information that fits the statutory definition of CMI, *see* 17 U.S.C. § 1202(c); *second*, even if the Photograph originally bore CMI, there is no factual allegation that Hearst removed it, and any such allegation would be implausible in light of Hearst's credit to "Rich Leighton;" *third*, the DMCA applies only if the alleged conduct was both knowing and intentional, but the FAC does not plausibly allege that Hearst acted with either knowledge or intent; and *fourth*, even if not for all those defects, Leighton does not allege an injury related to CMI, while an injury is prerequisite to a claim under the DMCA.

**A. The FAC does not plausibly allege that CMI was ever on the Photograph.**

The FAC fails to plausibly allege the most basic element of a DMCA claim. A DMCA claimant "must show . . . the existence of CMI on the allegedly infringed work." *Fischer v. Forrest*, 968 F.3d 216, 223 (2d Cir. 2020). Without allegations of the original CMI on the Photograph, there can be no plausible allegation that Hearst mishandled the CMI. Two aspects of the FAC demonstrate its failure to allege this element.

First, the DMCA's definition of "copyright management information" includes eight categories of information, 17 U.S.C. § 1202(c), including the name of an author, *id.* § 1202(c)(2), and copyright owner, *id.* § 1202(c)(3). The definition does not include the copyright symbol. Nor does it include the year in which a photograph was made. The FAC alleges that Leighton's webpage affixed two notations "immediately adjacent to" to the Photograph: (1) "© 2012," and (2) the name "Leighton Photography & Imaging." (FAC ¶¶ 10-11.) Neither of these notations is

CMI. As to the copyright symbol and the year 2012, no language in Section 1202(c) encompasses this notation, and the FAC does not even suggest that this notation would marginally affect the concealment of any infringement. As to the name "Leighton Photography & Imaging," these words appear to refer to an entity that is neither a party in this litigation nor the photographer nor the copyright owner. Because the FAC does not allege anything else about Leighton Photography & Imaging, the allegations cannot support an inference that this name fits into any statutory category of CMI.

Second, even if the name "Leighton Photography & Imaging" were CMI, it would not support this element because it is not "on the allegedly infringed work" as required by *Fischer*, 968 F.3d at 223. Where CMI does not appear "either on or near the images themselves" there can be no DMCA claim, such as where CMI appears at the beginning of a plaintiff's book but not "on or near the images" within the volume. *Schiffer Publ'g, Ltd. v. Chronicle Books, LLC*, No. 03-CV-4962, 2004 WL 2583817, at *14 (E.D. Pa. Nov. 12, 2004). The court in *Schiffer* held that no violation occurs if no CMI appears in either "the 'body' of, or area around, plaintiff's work itself." *Id.* Another court adopted a stricter test in the website context, relying on the literal rule that Section 1202 "applies only to the removal of copyright management information *on* a plaintiff's product or original work" and rejecting the plaintiff-photographer's DMCA claim where the CMI on the website "do[es] not appear in the images themselves." *Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1999) (emphasis added), *aff'd in part and rev'd in part on other grounds,* 336 F.3d 811 (9th Cir. 2003).

Here, the FAC includes Leighton's webpage as Exhibit 2. As the FAC's exhibit shows, immediately adjacent to the Photograph is a column with more than a hundred words of text. None of those words is "Leighton," "Photography," or "Imaging." Instead, the name "Leighton

Photography & Imaging" appears as the header at the top of the webpage, apparently not referring to the Photograph but to the webpage in general. The header is not nearly "immediately adjacent to" the Photograph, contrary to the FAC's allegation. Instead, it is separated from the Photograph by several lines of text links and two horizontal dividing lines. (FAC Ex. 2.) The name therefore appears neither "immediately adjacent to" the Photograph nor "on the allegedly infringed work." *Compare id. with* FAC ¶ 11; *Fischer*, 968 F.3d at 223.

**B. The FAC does not allege that Hearst removed CMI or provided false CMI.**

The FAC relies on two DMCA subsections, each of which requires its own specific factual allegations: (1) that Hearst "remove[d] . . . any [CMI]," for the Section 1202(b)(1) theory,[4] and (2) that Hearst "provide[d] [CMI] that is false" for the Section 1202(a)(1) theory.

The FAC cannot plausibly allege removal. Given that there was no CMI on the Photograph in the first place, *see supra* Part II.A, the FAC cannot plausibly allege that Hearst removed it. Moreover, the FAC does not allege whether Hearst or anyone else ever saw Leighton's webpage or ever became aware of any CMI. Even if Leighton's webpage had included CMI on the Photograph, the FAC still must allege conduct by Hearst *as to the CMI*. Instead, the FAC does not allege that Hearst did anything at all in connection with the CMI, other than in the conclusory recitation of the element. (FAC ¶ 23.) That gap forecloses the FAC from plausibly alleging the element that Hearst removed the CMI.

Nor does the FAC allege facts about false CMI. In fact, it alleges no facts related in any way to the CMI posted by Hearst. Although the FAC cites Section 1202(a)(1), which refers to false CMI, the FAC neither identifies what CMI Hearst provided nor explains why it is false. The exhibits fill this particular vacuum in the FAC. They show that each Hearst article included

[4] Section 1202(b)(1) prohibits either "remov[ing]" or "alter[ing]" CMI. The FAC expressly proceeds on a removal theory only. (FAC ¶ 23.)

identical credit immediately adjacent to the photograph—*actually* immediately adjacent to the Photograph—with the words, "Photo: Rich Leighton, Seattle Magazine." (FAC Exs. 3, 4.) In view of the image credits naming Leighton, he cannot claim that Hearst provided false CMI.

### C. A claim under the DMCA requires allegations of two scienter elements, but the FAC does not plausibly allege any scienter at all.

Even if Leighton had posted CMI on the Photograph, and even if Hearst had removed that CMI or provided false CMI, the FAC must also "set forth [a] factual basis for pleading th[e] double scienter requirement." *Krechmer v. Tantaros*, 747 F. App'x 6, 9 (2d Cir. 2018). The requirement comes from the text of the DMCA subsections cited in the FAC: Section 1202(a)(1) prohibits "knowingly" providing false CMI "with the intent to induce, enable, facilitate, or conceal infringement." Section 1202(b)(1) prohibits "intentionally remov[ing] or alter[ing]" CMI while "knowing, or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement." Accordingly, the Second Circuit affirmed a DMCA judgment for a defendant where a plaintiff had not supported its burden as to the scienter elements, *Zuma Press, Inc. v. Getty Images (US), Inc.*, 845 F. App'x 54, 58 (2d Cir. 2021), and in a different case, affirmed liability based on specific findings to support both scienter elements, *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 172 (2d Cir. 2020).

#### 1. The FAC does not plausibly allege that Hearst knew any CMI was false, altered, or removed, as it does not allege any facts related to Hearst's knowledge.

"The DMCA's first scienter element requires that a defendant distributing copyrighted material have actual knowledge that CMI 'has been removed or altered without authority of the copyright owner or the law,'" *Mango*, 970 F.3d at 172 (quoting 17 U.S.C. § 1202(b)), or in the case of a Section 1202(a)(1) claim, "a plausible allegation that defendant[] knew that [the distributed] copyright information was false," *Krechmer*, 747 F. App'x at 10. This knowledge

element—like any necessary element of a claim—requires non-conclusory, factual allegations, in order to satisfy the standard that "the plaintiff plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And for this knowledge element—like all others—"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The FAC does not allege how or where Hearst got the Photograph. It does not allege whether Hearst ever saw any CMI in connection with the Photograph before using it. Nor does it allege how Hearst learned of Leighton's first and last name in order to provide the gutter credit to "Rich Leighton, Seattle Magazine." (FAC Exs. 3-4.) While the FAC alleges what information was noted on Leighton's website, Leighton's first name is not among that information (FAC Ex. 2), and in any event, the FAC does not allege that Hearst ever visited Leighton's website or knew it existed (FAC ¶¶ 10-11).

The FAC contains just one allegation that even arguably relates to the DMCA's first scienter element: "Plaintiff is informed and believes that Defendant . . . knowingly and with the intent to conceal infringement, intentionally removed the [CMI] from [the Photograph] before displaying [the Photograph] . . . ." (FAC ¶ 23.) Thus, the FAC contains no factual, non-conclusory allegation on this element. Instead, it merely inserts the phrase, "with the intent to conceal infringement," amid its list of other elements. (*Id.*) This allegation fits squarely in the type of allegation *Iqbal* called "[t]hreadbare recitals of the elements of a cause of action," which "do not suffice." 556 U.S. at 678.

**2. The FAC does not plausibly allege that Hearst took any steps with intent to further or conceal infringement, in light of Hearst's credit to Leighton.**

To satisfy the DMCA's second scienter element, the FAC must allege that Hearst's actions toward the CMI were undertaken to "induce, enable, facilitate, or conceal infringement." 17 U.S.C. § 1202(a), (b); *see Mango*, 970 F.3d at 172. As an initial matter, the same fact that defeats the first scienter element also forecloses the FAC from plausibly pleading the second element. Moreover, the FAC's exhibits eliminate any plausibility of an alleged intent to conceal infringement, because they reveal that Hearst credited Leighton himself. (FAC Exs. 3-4.)

In *Krechmer*, the Second Circuit affirmed dismissal of a DMCA claim even though the plaintiff alleged that the defendant had added false CMI to a copyrighted work, on the grounds that the complaint did not include sufficient factual allegations from which a court could plausibly infer scienter. 747 F. App'x at 9-10. As the court explained, notwithstanding the detailed allegations about false CMI, "[s]uch facts do not amount to a plausible allegation . . . that defendants intended to conceal valid CMI." *Id.* at 10.

Following *Krechmer*, district courts dismiss DMCA claims under Rule 12(b)(6) where a complaint alleges only "conclusory allegations" on whether "defendants [acted] with the 'intent to induce, enable, facilitate, or conceal infringement.'" *Michael Grecco Prods., Inc. v. Time USA, LLC*, No. 20-CV-4875, 2021 WL 3192543, at *6 (S.D.N.Y. July 27, 2021) (citation omitted). In *Michael Grecco Productions v. Time*, the court contrasted the inadequate, conclusory scienter allegations with an earlier case brought by the same plaintiff. *See id.* at *6 n.12. In the earlier case, the plaintiff had adequately pled this element, specifically because the defendant in the earlier case was a licensee who allegedly (1) knew the license was expiring, (2) knew that it no longer had authority to display the copyrighted works, and (3) placed misleading watermarks on the copyrighted works in order to continue using them in the absence

of a valid license. *See id.* (citing *Michael Grecco Prods., Inc. v. Alamy, Inc.*, 372 F. Supp. 3d 131, 139 (E.D.N.Y. 2019)).

In considering whether the FAC alleges Hearst's scienter, the Court can look beyond the prose allegations to the exhibits. "[W]here a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146-47 (2d Cir. 2011). Here, the FAC does not attempt to explain how the credit shown in the exhibits would further or conceal any infringement. And it certainly does not sufficiently allege that Hearst intended or knew of that result. To the contrary, the exhibits show that Hearst included an image credit that expressly named Leighton. The following text immediately follows each use of the Photograph: "Photo: Rich Leighton, Seattle Magazine." (FAC Exs. 3-4.)

The FAC's conclusory allegations do not mention this image credit to Leighton. Nor do they provide any facts that would allow the Court to reasonably infer Hearst's scienter in light of this image credit. After all, it is implausible that Hearst would expressly identify Leighton in the image credit as part of a design to conceal an infringement. The FAC therefore fails to "plead[] factual content that allows the court to draw the reasonable inference" required for Leighton to satisfy this element. *Iqbal*, 556 U.S. at 678.

**D. Leighton has no cause of action under the DMCA because the FAC does not plead an injury.**

Even if the FAC had alleged all the other elements of a DMCA violation, it would still fail to state a claim absent any alleged injury. When Congress enacted the DMCA, it provided an express but limited right of action, available only to a "person injured by a violation of [17 U.S.C. §] 1201 or 1202 . . . ." 17 U.S.C. § 1203(a). The FAC is required to plead that "the particular plaintiff 'has a cause of action under the statute,'" which was "formerly called

'statutory standing.'" *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014)).

The FAC falls far short of plausibly pleading that Leighton fits Section 1203(a)'s description of a person with statutory standing. Indeed, Leighton does not appear to even try to allege an injury from a DMCA violation. In the two-paragraph DMCA count, no reference to any injury can be found. (FAC ¶¶ 23-24). And even if Leighton had alleged an injury, it would be implausible given that Hearst credited him by name. *See supra* Part II.C.2.

**III. At a minimum, the FAC's impermissible requests for relief should be dismissed.**

**A. The FAC does not plausibly state a claim for statutory damages or attorney's fees based on the alleged infringement, given Leighton's untimely registration.**

The Copyright Act unambiguously excludes statutory damages and attorney's fees from cases where, as alleged here, "infringement of copyright commenced after first publication of the work and before the effective date of its registration." 17 U.S.C. § 412(2). That provision contains an exception, which does not apply here, if "registration is made within three months after the first publication of the work." *Id.* A copyright plaintiff who fails to register a copyright within Section 412(2)'s three-month grace period is, as a matter of law, "ineligible for statutory damages or attorney's fees." *On Davis v. The Gap, Inc.*, 246 F.3d 152, 158 n.1 (2d Cir. 2001).

The timeline here is straightforward and leaves no room for Leighton to argue that he is entitled to statutory damages or attorney's fees: The FAC alleges that Leighton first published the Photograph in 2012 (FAC ¶ 9; *see also id.* Ex. 5 at 2); that Hearst used the Photograph later in 2012 and in 2015 (FAC ¶¶ 12-13); and that Leighton registered his copyright in 2017 (FAC ¶ 14; *see also id.* Ex. 5 at 1). The alleged infringement therefore commenced after the first publication of the work and years before the registration.

Inexplicably, the FAC alleges that "Plaintiff is entitled to actual *or statutory damages* . . . pursuant to 17 U.S.C. § 504 for Defendant's infringement of [the] Photograph." (FAC ¶ 22 (emphasis added).) And the FAC's prayer for relief seeks "statutory damages for Defendant's copyright infringement" (FAC at 5 ¶ D) and "his costs, reasonable attorney's fees, and disbursements in this action, pursuant to 17 U.S.C. § 504-5 [sic] . . ." (FAC at 5 ¶ E).

This relief is plainly foreclosed by Section 412(2). If the infringement claim survives this motion, the Court should dismiss to the extent of these claimed remedies, which are precluded as a matter of law.

**B. The FAC does not plausibly state a claim for equitable relief, due to laches.**

The equitable doctrine of laches bars Leighton from the equitable relief he has requested. The Supreme Court has explained in the copyright context that laches "is a defense . . . to claims of an equitable cast" but "cannot be invoked to bar legal relief." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 678-69 (2014). Accordingly, the only time limit for legal damages under the Copyright Act is the three-year statute of limitations,[5] but a claim for equitable relief is further limited by laches. *See id.* "The equitable defense of laches bars an equitable claim where the plaintiff has unreasonably and inexcusably delayed, resulting in prejudice to the defendants." *Allens Creek/Corbetts Glen Pres. Grp., Inc. v. West*, 2 F. App'x 162, 164 (2d Cir. 2001).

The FAC's timeline shows that Leighton slept on his rights. After creating the Photograph and posting it to his webpage, he waited more than five years to apply for a copyright registration. (*Compare* FAC ¶¶ 8-9 *with id.* ¶ 14.) He alleges that almost three more years passed before he learned of the alleged infringement (FAC ¶ 15), even though by that time Hearst had (as alleged) publicly shown the Photograph with Leighton's name in the image credit

[5] If this lawsuit survives the motion-to-dismiss stage, Hearst will further defend itself based on the statute of limitations, which will bar Leighton's claims.

for nearly eight years. And even after he learned of the alleged infringement, Leighton waited two and a half more years before filing this lawsuit. All told, nine years and ten months passed between the start of the alleged infringement and the start of the lawsuit. Leighton now seeks an accounting of Hearst's profits during that time, among other equitable relief (FAC at 5 ¶¶ A-C), which would inequitably reward him for sleeping on his rights.

## CONCLUSION

The FAC neither alleges an injury nor states a claim even if Leighton were injured. This Court should dismiss the FAC with prejudice under Rule 12(b)(1) and 12(b)(6) and award Hearst's costs and reasonable attorney's fees. If the Court does not dismiss Count One, it should dismiss to the extent of the request for statutory damages and attorney's fees. If the Court does not dismiss the FAC in its entirety, it should dismiss to the extent of all requests for equitable relief. Finally, the Court should grant all other relief that it deems appropriate.

Dated: September 9, 2022
New York, New York

By: *_/s/ Matthew Greenfield_*

Matthew Greenfield
Ravi V. Sitwala
The Hearst Corporation
Office of General Counsel
300 West 57th Street, 40th Floor
New York, New York 10019
Matthew.Greenfield@hearst.com
Phone: (212) 649-2009

*Counsel for Defendant Hearst Communications, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on September 9, 2022.

*/s/ Matthew Greenfield*
Matthew Greenfield